*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

| | |
|---|---|
| PEOPLE OF THE STATE OF MICHIGAN, | UNPUBLISHED |
| | April 24, 2026 |
| Plaintiff-Appellee, | 9:00 AM |
| v | No. 369706 |
| | Kent Circuit Court |
| LEECLIFTON JEROME MOORE, | LC No. 05-009552-FC |
| Defendant-Appellant. | |

Before: RIORDAN, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Defendant, Leeclifton Jerome Moore, appeals as of right his resentence to a term of 40 to 60 years' imprisonment for his 2006 jury-trial conviction of first-degree felony murder MCL 750.316(1)(b) (murder committed in the perpetration of first-degree child abuse). Defendant argues that the trial court abused its discretion by failing to properly address defendant's youth during resentencing and by issuing a disproportionate sentence. Because we conclude that the trial court did address and consider defendant's youth and that the sentence imposed was proportionate, we affirm.

## I. PROCEDURAL AND FACTUAL HISTORY OF CASE

In 2005, defendant murdered the two-year-old child of his then-girlfriend. A previous panel of this Court wrote:

> In this case, the evidence demonstrated that the victim's mother left her children with defendant in the morning on August 24, 2005. At that time, the children, including the victim, were in relatively healthy conditions. There was testimony about loud noises and children crying and screaming during the morning of August 24, 2005. This noise continued for a lengthy period of time, and the incident occurred one day after defendant violently swung the victim around, causing him to be frightened and injured. The victim's mother testified that when she returned, the victim was without clothes and non-responsive; the victim gasped for breath three times en route to the hospital. The victim's mother also testified that the victim had new bruises on his chest and thighs, and that his penis was

-1-

swollen and bleeding. Defendant admitted that he was not a suitable baby sitter for small children and pointed out that the victim's older sisters feared him because of the long list of the victim's injuries. [*People v Moore*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2007 (Docket No. 269246), p 5 (SAWYER, P.J., and TALBOT, J.; WHITE, J., dissenting), lv den 480 Mich 1044 (2008).]

Defendant's presentence investigation report summarized the autopsy detailing the victim's injuries as follows:

The Kent County office of the Medical Examiner reported that two-year-old complainant [victim] did die [due] to multiple blunt force injuries at 7:00 am on 8/25/2005. The victim's body did show multiple cutaneous abrasions, contusions and lacerations with external injuries of all extremities, back, buttocks, head, and external genitalia. The autopsy report went on to indicate that the victim suffered from hemorrhaging of the right lung, an acute fracture of the left seventh rib, an acute fracture of the right humerus, a large laceration of the liver, a contusion of the small bowel, and a contusion of the transverse colon.

In 2006, a jury convicted defendant of first-degree felony murder, and the trial court sentenced defendant to serve life imprisonment without the possibility of parole.

In light of the emerging caselaw under *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the trial court conducted a *Miller* hearing in December 2018 and upheld defendant's life sentence. Defendant appealed, arguing, in part, that his counsel at the 2018 *Miller* hearing was ineffective. A panel of this Court remanded for a *Ginther* hearing, which took place in April 2022.[1] The legal landscape continued to develop, and, in December 2022, in light of *People v Taylor*, 510 Mich 112; 987 NW2d 132 (2022), a panel of this Court vacated defendant's sentence of life without parole and remanded for resentencing.[2] The trial court conducted a resentencing hearing in October 2023 at which the prosecution stipulated to a term-of-years sentence. The trial court found that defendant's brain development at the time of the offense, history of trauma and abuse, and rehabilitation were mitigating factors. The trial court also considered the underlying offense, which it found to be particularly harrowing. After the completion of proofs and argument, the trial court concluded:

[T]his, in my opinion, was one of the most gruesome, disturbing murders I have been involved in. And so, the Appellate Courts understand where I am coming from. I want them to realize that I have been doing criminal work for 38 years. I have been on the bench for 17 years. In my career, I have been involved in over

---

[1] *People v Moore*, unpublished order of the Court of Appeals, entered February 12, 2020 (Docket No. 349584).

[2] *People v Moore*, unpublished per curiam opinion of the Court of Appeals, issued December 15, 2022 (Docket No. 349584).

10,000 felony cases, over 150 murders, and in my opinion, this is the most egregious murder that I have ever seen on what was inflicted on this innocent two-year old child.

The trial court then imposed a sentence of 40 to 60 years' imprisonment—the maximum sentence permitted by MCL 769.25a—with credit for 6,631 days served. Defendant now appeals.

## II. ANALYSIS

A trial court's sentencing decision is reviewed for an abuse of discretion. *People v Skinner*, 502 Mich 89, 131; 917 NW2d 292 (2018). An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *Id*. A trial court abuses its discretion if the defendant's sentence is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks and citation omitted). See also *Graham v Florida*, 560 US 48, 59; 130 S Ct 2011; 176 L Ed 2d 825 (2010). We review a trial court's findings of facts underlying its sentencing decision for clear error. *Babcock*, 469 Mich at 264. A factual finding is clearly erroneous when we are "left with the definite and firm conviction that a mistake has been made." *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008) (quotation marks and citation omitted).

Defendant first argues that the trial court failed to properly address defendant's youth because it did not assess the *Snow*[3] factors.

"[I]n all sentencing hearings conducted under MCL 769.25 or MCL 769.25a, trial courts are to consider the defendant's youth and must treat it as a mitigating factor." *People v Boykin*, 510 Mich 171, 189; 987 NW2d 58 (2022). The Michigan Supreme Court affirmed "that sentencing courts should be guided by the *Snow* factors, which necessarily includes the consideration of youth as a mitigating factor." *Id*. at 192.

Under *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972), when "determining an appropriate sentence," a trial court may consider (1) the defendant's reformation, (2) the protection of society, (3) the discipline of the defendant, and (4) the deterrent effect that the sentence would have on others. However, the *Snow* factors "are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *Boykin*, 510 Mich at 183-184. Further, a trial court is not required "to articulate a basis on the record to explain how youth affected the sentence imposed." *Id*. at 192-193.

Applied specifically, "there is no requirement that a trial court resentencing a defendant to a term-of-years sentence under MCL 769.25a articulate on the record its consideration of the mitigating qualities of youth within *Snow*'s sentencing criteria." *People v Copeland*, ___ Mich

---

[3] *People v Snow*, 386 Mich 586; 194 NW2d 314 (1972)

App ___, ___; ___ NW3d ___ (2024) (Docket No. 363925); slip op at 4. Instead, "[trial courts] sentencing juvenile defendants to a term-of-years sentence under MCL 769.25a are required only to make a record demonstrating that the court considered the defendant's youth and treated it as a mitigating factor." *Id*.

We again hold, when a trial court resentences a defendant to a term-of-years sentence under MCL 769.25a, it is not required to articulate on the record its consideration of the mitigating qualities of youth within *Snow*'s sentencing criteria, so long as the record as a whole shows the sentencing court considered the defendant's youth and this was treated as a mitigating factor. See *Copeland*, ___ Mich App at ___; slip op at 4.

In the present case, even though not specifically required to do so, the trial court noted that it considered a report about juvenile brain development by Dr. Daniel Keating, defendant's psychological evaluation by Dr. Sharon Kelly, defendant's sentencing memorandum, defendant's educational and legal history, defendant's behavior in prison, and the details of the offense.

First, the trial court found that the ongoing development of the prefrontal cortex in juvenile defendants was a mitigating factor. Second, the trial court found that defendant's background at the time of the offense was a mitigating factor. The trial court found that defendant had endured trauma and abuse during his childhood, specifically at the hands of his mother's then-boyfriend. The trial court also considered defendant's educational history, legal history, and mental-health issues. Third, the trial court found that defendant's rehabilitation was a mitigating factor. In her report, Dr. Kelly concluded that defendant demonstrated rehabilitation through his involvement in classes and work and decreasing disciplinary infractions. The trial court agreed that many of defendant's tickets were insignificant and that defendant's time in incarceration was illustrative of juvenile defendants as they mature. The trial court found that defendant accepted responsibility.

Because the record is clear that the trial court found that defendant's brain development at the time of the offense, defendant's individual background at the time of the offense, and defendant's rehabilitation since entering incarceration as a juvenile were mitigating factors, the record adequately supported that the trial court "considered the defendant's youth and treated it as a mitigating factor." *Id*.

To the extent that defendant suggests that the trial court failed to consider *any Snow* factor, the record does not support the defense's position. The trial court explicitly considered defendant's rehabilitation. See *Snow*, 386 Mich at 592. Further, the trial court implicitly considered defendant's personal discipline for what it found to be an egregious offense. See *id*. "[T]rial courts are not required to consider each of [the *Snow*] factors when imposing a sentence." *Boykin*, 510 Mich at 183-184.

Accordingly, the trial court properly considered defendant's youth as a mitigating factor. See *Copeland*, ___ Mich App at ___; slip op at 4.

Defendant next makes several arguments suggesting that his sentence was disproportionate. These arguments are without support in the record. We address each argument in turn.

The principle of proportionality requires that a sentence be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474 (quotation marks and citation omitted).

When "the Legislature has assigned a range of sentencing outcomes for any given conviction, the trial court has authority to sentence a defendant within that range." *Boykin*, 510 Mich at 183. To adhere to the principle of proportionality, "[w]ithin that range, the sentence should be tailored to the particular circumstances of the case and offender." *Id*. When the prosecution does not move to sentence a juvenile defendant convicted of first-degree felony murder to life in prison without the possibility of parole, the trial court may sentence the juvenile defendant convicted of first-degree murder to a minimum sentence ranging from 25 to 40 years and a maximum sentence of 60 years. MCL 769.25; MCL 769.25a; *Boykin*, 510 Mich at 184.

Before a trial court may sentence a juvenile offender to life without the possibility of parole, the trial court must consider the following *Miller* factors as outlined by the Michigan Supreme Court:

> (1) [T]he juvenile's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the juvenile's family and home environment—"from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) "the incompetencies of youth," which affect whether the juvenile might have been charged with and convicted of a lesser crime, for example, because the juvenile was unable to deal with law enforcement or prosecutors or because the juvenile did not have the capacity to assist their attorney in their own defense; and (5) the juvenile's "possibility of rehabilitation." [*Taylor*, 510 Mich at 126, citing *Miller*, 567 US at 477-478.]

However, "[w]hen a juvenile defendant is sentenced to a term of years, there is no requirement that the sentencing court consider the *Miller* factors, expressly or otherwise." *Copeland*, ___ Mich App at ___; slip op at 6, citing *Boykin*, 510 Mich at 193-194. Instead, to adequately address the principle of proportionality, a trial court is required only to "justify the sentence imposed in order to facilitate appellate review." *Boykin*, 510 Mich at 192. A trial court may "enhance[] an appellate court's ability to review the proportionality of the sentence" by considering the *Miller* factors when sentencing a juvenile defendant to a term of years, though such consideration is within the trial court's discretion. *Copeland*, ___ Mich App at ___; slip op at 6. Under the principle of proportionality, "[a] defendant's conduct underlying an offense . . . must always be considered by a sentencing court . . . ." *Id*. at ___; slip op at 11.

As an initial matter, the trial court was not required to consider the *Miller* factors when sentencing defendant to a term-of-years sentence. See *id*. at ___; slip op at 6. To the extent that the trial court considered any of the *Miller* factors on the record, whether to engage in this review was within the trial court's discretion. See *id*.

Defendant argues that his sentence was disproportionate because the trial court found several mitigating factors but imposed the maximum sentence allowed by statute.

The *Copeland* Court noted that all defendants sentenced under MCL 769.25 or MCL 769.25a will necessarily have some amount of the mitigating factor of youth. *Copeland*, ___ Mich App at ___; slip op at 11. The *Copeland* Court, therefore, concluded that, "without more, the fact that the trial court . . . found several aspects of defendant's youth to be mitigating factors does not suggest that the sentence imposed is disproportionate." *Id*. Under the principle of proportionality, the trial court was required to consider the underlying offense and issue a sentence that was proportionate in light of both defendant and the offense. See *Steanhouse*, 500 Mich at 474; *Copeland*, ___ Mich App at ___; slip op at 11.

At sentencing, the trial court, as discussed above, highlighted the details of the victim's injuries, including: abrasions on the forehead; bruising and abrasions on the left eye, right cheek, ear, lips, head, back, and buttocks; hemorrhaging in the skull; brain swelling; two internal bleeds; retinal hemorrhages in both eyes; blood in the lungs; a fractured rib; two tears in the liver; bruising on the colon; a fractured elbow; bone splinters; and a ligature tear around the penis and scrotum. The trial court also noted that testimony from the neighbors suggested that the abuse went on for a significant period during which the neighbors could hear yelling, crying, and the sounds of a physical beating. The trial court noted that defendant confessed to hitting the victim multiple times. The trial court concluded: "[T]his, in my opinion, was one of the most gruesome, disturbing murders I have been involved in. . . . [I]n my opinion, this is the most egregious murder that I have ever seen on what was inflicted on this innocent two-year old child."

Given the harrowing nature of the underlying murder and defendant's sole responsibility for the victim's death, the trial court's sentence to serve 40 to 60 years' imprisonment cannot be said to be beyond the range of principled outcomes. See *Babcock*, 469 Mich at 269.

Defendant next argues that the trial court's consideration of the underlying offense impermissibly treated a *Miller* factor as aggravating.

Findings under the *Miller* factors must either be mitigating or neutral. *Taylor*, 510 Mich at 139 n 25. The third *Miller* factor requires a trial court sentencing a juvenile offender to life without the possibility of parole to consider "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him . . . ." *Id*. at 126 (quotation marks and citation omitted). Yet, when issuing a term-of-years sentence, a trial court is not required to consider the *Miller* factors. *Copeland*, ___ Mich App at ___; slip op at 6. In issuing a proportionate sentence, the trial court is, however, required to consider both the mitigating effect of a defendant's youth *and* the seriousness of the underlying offense. See *Steanhouse*, 500 Mich at 474; *Copeland*, ___ Mich App at ___; slip op at 11-12. Defendant's argument that the underlying facts may not be used as an aggravating factor is at odds with the principle of proportionality that requires a sentence to be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474 (quotation marks and citation omitted). Therefore, the trial court did not err by considering the facts surrounding the incident when determining a proportionate sentence. See *Steanhouse*, 500 Mich at 474; *Copeland*, ___ Mich App at ___; slip op at 11-12.

Finally, defendant argues that the trial court failed to correctly assess the third *Miller* factor regarding "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him . . . ." *Taylor*, 510 Mich at 126 (quotation marks and citation omitted).

Again, the trial court was not required to address the *Miller* factors. *Copeland*, ___ Mich App at ___; slip op at 6. However, to the extent that the trial court's findings regarding the severity of the offense overlapped with the third *Miller* factor, it cannot be said that the trial court's findings regarding the circumstances of the offense were clearly erroneous. See *Babcock*, 469 Mich at 264. Defendant acted alone and inflicted significant injuries to the victim.

Defendant argued that he had a violent and abusive childhood and learned "to act aggressively through modelling." While the court considered this evidence and argument, it also considered the other facts and circumstances of the offense and applied the weight it concluded each warranted and then imposed sentence.

The defense argues, that under a *Miller* analysis, a trial court's findings regarding the third *Miller* factor may only be neutral or mitigating. See *Taylor*, 510 Mich at 139 n 25. But, in determining a proportionate term-of-years sentence, the trial court was permitted to consider the seriousness of the offense. See *Steanhouse*, 500 Mich at 474; *Copeland*, ___ Mich App at ___; slip op at 11. Therefore, the trial court's finding that the circumstances of the offense were particularly egregious was not clear error. See *Babcock*, 469 Mich at 264. Further, the trial court's consideration of this finding when determining a proportionate term-of-years sentence was proper. See *Steanhouse*, 500 Mich at 474; *Copeland*, ___ Mich App at ___; slip op at 11.

We hold that when sentencing a defendant under MCL 769.25a to a term-of-years sentence, it is completely appropriate for the sentencing court to consider the underlying offense as discussed above and to provide a comparison or description of the aggravating and/or mitigating factors present in comparison to the cases the trial court has adjudicated or been involved with. While it is not required to do this—and a lesser articulation of detail would not be reversible error—when the trial court provides this level of granularity, it assists the appellate tribunal in assessing proportionality of the sentence imposed and the decisions made by the trial court.

Overall, the trial court adequately addressed defendant's youth and found that his brain development, history of trauma and abuse, and rehabilitation were mitigating factors. See *Boykin*, 510 Mich at 189; *Steanhouse*, 500 Mich at 474; *Copeland*, ___ Mich App at ___; slip op at 4. However, the trial court also found the circumstances of the offense to be particularly egregious. In doing so, the trial court appropriately considered the underlying offense when determining a proportionate sentence. See *Steanhouse*, 500 Mich at 474; *Copeland*, ___ Mich App at ___; slip op at 11. Though other reasonable sentences may have been chosen, defendant's sentence is within the range of "reasonable and principled outcome[s]." *Babcock*, 469 Mich at 269.

For the foregoing reasons, the trial court did not abuse its discretion when sentencing defendant.  See *Steanhouse*, 500 Mich at 459-460, 474; *Babcock*, 469 Mich at 269.

Affirmed.

/s/ Michael J. Riordan
/s/ James Robert Redford
/s/ Sima G. Patel